UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY; MARIO CARRILLO; JOSEPH CASCINO; JUSTIN CHAMPLIN; EDWARD ESPINOZA; OMAR GALLAGA; FATIMA MANIAR; JENNIFER RAMOS; JOHN RUFFIER; and JAMES SCURLOCK, <br><br> Plaintiffs, <br><br> v. <br><br> WARREN KENNETH PAXTON, JR., Attorney General of Texas, <br><br> Defendant. | Civil Action No. ___1:21-cv-00307___ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**Introduction**

1.      Defendant Texas Attorney General Warren Kenneth Paxton, Jr., ("Attorney General Paxton" or "Defendant") uses the @KenPaxtonTX Twitter account for official purposes—including to share information with constituents and solicit their views about government policy—but he has blocked many people from the account because they criticized him or his policies. This practice is unconstitutional.

2.      Plaintiffs are the Knight First Amendment Institute at Columbia University ("Knight Institute"), as well as nine individuals who were blocked from the @KenPaxtonTX account after they criticized Attorney General Paxton or his policies ("Individual Plaintiffs"). Attorney General Paxton's blocking of the Individual Plaintiffs from the account based on viewpoint violates the Individual Plaintiffs' right to speak in a public forum. It also violates

1

their right of access to important government information, and their right to petition the government for redress of grievances. The Knight Institute has not been blocked, but it follows both the @KenPaxtonTX account and the Individual Plaintiffs' accounts. Attorney General Paxton's blocking of critics from the @KenPaxtonTX account violates the Knight Institute's and the Individual Plaintiffs' right to hear the speech that these individuals would have engaged in had they not been blocked from the account.

3.      Plaintiffs respectfully ask that the Court declare that Defendant's blocking of the Individual Plaintiffs violates the First Amendment, order Defendant to unblock the Individual Plaintiffs from the @KenPaxtonTX account, order Defendant to unblock all other individuals who were blocked from the account based on their viewpoints, and order other relief as requested below.

## Jurisdiction and Venue

4.      This action arises under 42 U.S.C. § 1983 for violations of civil rights under the First and Fourteenth Amendments to the United States Constitution.

5.      The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

6.      Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

7.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendant resides in this District and a substantial part of the events giving rise to this claim occurred in this District.

## Parties

8.      The Knight Institute is a New York not-for-profit corporation based at Columbia University that works to preserve and expand the freedoms of speech and the press in the digital age through strategic litigation, research, and public education. The Knight Institute's staff operate a Twitter account under the handle @knightcolumbia.

2

9.      Plaintiff Mario Carrillo, who resides in Austin, Texas, is a campaign manager for a pro-immigration organization. He operates a Twitter account under the handle @_mariocarrillo_.

10.     Plaintiff Joseph Cascino, who resides in Austin, Texas, is a student at the University of Texas at Austin. He operates a Twitter account under the handle @Joecascinotx.

11.     Plaintiff Justin Champlin, who resides in Austin, Texas, works in sales for a technology company. He operates a Twitter account under the handle @DesPorkLoins.

12.     Plaintiff Edward Espinoza, who resides in Austin, Texas, is the executive director of a media organization that promotes progressive messages. He operates a Twitter account under the handle @EdEspinoza.

13.     Plaintiff Omar Gallaga, who resides in New Braunfels, Texas, is a freelance journalist. He operates a Twitter account under the handle @omarg.

14.     Plaintiff Fatima Maniar, who resides in Houston, Texas, is a United States Army veteran and project manager for a health insurance company. She operates a Twitter account under the handle @fatimamhtx.

15.     Plaintiff Jennifer Ramos, who resides in Austin, Texas, is a project assistant for a communications firm. She operates a Twitter account under the handle @itsjenramos.

16.     Plaintiff John Ruffier, who resides in El Paso, Texas, is a student at the University of Texas at El Paso, and an office assistant at a medical supply company. He operates a Twitter account under the handle @notthechips.

17.     Plaintiff James Scurlock, who resides in Leander, Texas, is an attorney. He operates a Twitter account under the handle @realscurlock.

18.     Defendant Warren Kenneth Paxton, Jr., is Attorney General of Texas and is sued in his official capacity. Attorney General Paxton operates a verified Twitter account under the handle @KenPaxtonTX and has blocked all of the Individual Plaintiffs from this account.

## **Background**

### A.     Twitter

19.     Twitter is a social media platform with more than 330 million active users worldwide, including some 70 million in the United States. The platform allows users to publish short messages, to republish or respond to others' messages, and to interact with other Twitter users in relation to those messages. Speech posted on Twitter ranges from personal insult to poetry, but particularly relevant here is that a significant amount of speech posted on the platform is speech by, to, or about the government.

20.     Users. A Twitter "user" is an individual who has created an account on the platform. A user can post "tweets," up to 280 characters in length, to a webpage on Twitter that is attached to the user's account. Tweets can include photographs, videos, and links. Some Twitter users do not tweet—i.e., publish messages—at all. Others publish hundreds of messages a day.

21.     Timelines. A Twitter user's webpage displays all tweets generated by the user, with the most recent tweets appearing at the top of the page. This display is known as a user's "timeline." When a user posts a tweet, the timeline updates immediately to include that tweet. Anyone who can view a user's public Twitter webpage can see the user's timeline. Below is a screenshot of part of the timeline associated with the @KenPaxtonTX account:



22.     A Twitter user must have an account name, which is an @ symbol followed by a

unique identifier (e.g., @KenPaxtonTX), and a descriptive name (e.g., Attorney General Ken

Paxton). The account name is called the user's "handle." Alongside the handle, a user's

webpage will display the date the user joined Twitter. A user's Twitter webpage may also

include a short biographical description; a profile picture, such as a headshot; a "header"

image, which appears as a banner at the top of the webpage; the user's location; and a small

sample of photographs and videos posted to the user's timeline, which link to a full gallery. Thus, part of the webpage for @KenPaxtonTX recently looked like this:



23.    <u>Tweets</u>. An individual "tweet" comprises the tweeted content (i.e., the message, including any embedded photograph, video, or link), the user's account name (with a link to the user's Twitter webpage), the user's profile picture, the date and time the tweet was generated, and the number of times the tweet has been replied to (♡), retweeted by (⟲), or liked by (♡) other users. Upon clicking on a particular tweet, the tweet will show the number of times the tweet has been retweeted; "quote tweeted," in which other users retweet the tweet and add their own content; and liked. Thus, a recent tweet from @KenPaxtonTX looked like this:



24.     By default, Twitter webpages and their associated timelines are visible to everyone with Internet access, including those who are not Twitter users. However, although non-users can view users' Twitter webpages, they cannot interact with users on the Twitter platform.

25.     <u>Following</u>. Twitter users can subscribe to other users' messages by "following" those users' accounts. Users see all tweets posted or retweeted by accounts they have followed. This display is labeled "Home" on Twitter's site, and it is often colloquially referred to as a user's "feed."

26.     <u>Verification</u>. Twitter permits users to establish accounts under their real names or pseudonyms. Though Twitter has temporarily put its verification process on hold, users who previously wanted to establish that they were who they claimed to be could ask Twitter to "verify" their accounts. When an account is verified, a blue badge with a checkmark appears next to the user's name on his or her Twitter page and on each tweet the user posts.

27.     <u>Retweeting</u>. Beyond publishing tweets to their followers, Twitter users can engage with one another in a variety of ways. For example, they can "retweet"—i.e., republish—the tweets of other users, either by publishing them directly to their own followers

or by "quoting" them in their own tweets. When a user retweets a tweet, it appears on the user's timeline in the same form as it did on the original user's timeline, but with a notation indicating that the post was retweeted. This is a recent retweet by @KenPaxtonTX:



28.   <u>Replying</u>. A Twitter user can also reply to other users' tweets. Like any other tweet, a reply can be up to 280 characters in length and can include photographs, videos, and links. When a user replies to a tweet, the reply appears on the user's timeline under a tab labeled "Tweets & replies." The reply will also appear on the original user's feed in a "comment thread" under the tweet that prompted the reply. Other users' replies to the same tweet will appear in the same comment thread. Reply tweets by verified users, reply tweets by users with a large number of followers, and tweets that are "favorited" and retweeted by large numbers of users generally appear higher in the comment threads.

29.    <u>Comment threads</u>. A Twitter user can also reply to other replies. A user whose tweet generates replies will see the replies below his or her original tweet, with any replies-to-replies nested below the replies to which they respond. The collection of replies and replies-to-replies is sometimes referred to as a "comment thread." Twitter is called a "social" media platform in large part because of comment threads, which reflect multiple overlapping conversations among and across groups of users. Below is a @KenPaxtonTX tweet that prompted more than 300 comments:



30.    <u>Liking</u>. A Twitter user can also "like" another user's tweet by clicking on the heart icon that appears under the tweet. By "liking" a tweet, a user may mean to convey approval of or to acknowledge having seen the tweet.

31.     Mentioning. A Twitter user can also "mention" another user by including the other user's Twitter handle in a tweet. A Twitter user mentioned by another user will receive a "notification" that he or she has been mentioned in another user's tweet.

32.     Tweets, retweets, replies, likes, and mentions are controlled by the user who generates them. No other Twitter user can alter the content of any retweet or reply, either before or after it is posted. Twitter users cannot prescreen tweets, replies, likes, or mentions that reference their tweets or accounts.

33.     Protected tweets. Because all Twitter webpages are by default visible to all Twitter users and to anyone with access to the Internet, users who wish to limit who can see and interact with their tweets must affirmatively "protect" their tweets. Other users who wish to view "protected" tweets must request access from the user who has protected his or her tweets. "Protected" tweets do not appear in third-party search engines, and they are searchable only on Twitter, and only by the user and his or her approved followers.

34.     Blocking. A user whose account is public (i.e., not protected) but who wants to deny another user access to his or her tweets can do so by "blocking" that user. (Twitter provides users with the capability to block other users, but, importantly, it is the users themselves who decide whether to make use of this capability.) A user who blocks another user prevents the blocked user from interacting with the blocking user's account on the Twitter platform. A blocked user cannot see or reply to the blocking user's tweets, view the blocking user's list of followers or followed accounts, or use the Twitter platform to search for the blocking user's tweets. The blocking user will not be notified if the blocked user mentions him or her; nor will the blocking user see any tweets posted by the blocked user.

35.     If the blocked user attempts to follow the blocking user, or to access the Twitter webpage from which the user is blocked, the user will see a message indicating that the other user has blocked him or her from following the account and viewing the tweets associated with the account. This is an example of a notification from Twitter that a user has been blocked:



36.     <u>Hiding Replies:</u> In November 2019, Twitter implemented a feature that permits users to hide replies to their tweets. To use the feature, the user authoring the original tweet can click the "hide reply" button to hide any specific reply to the author's tweet. That specific reply will then be hidden to the original user as well as to other users, without notification to the replying user. Both the original user and all other users will still be able to see all hidden replies by clicking on a "hidden reply" icon on the original tweet, unless the hidden reply is from a protected account or the hidden reply is deleted by the replying user. The original user may unhide a reply by clicking the "unhide reply" button that appears on each of the hidden replies.

37.     <u>Limiting Replies:</u> In August 2020, Twitter implemented a feature that allows Twitter users to limit who can reply to their tweets. To use this feature, the user authoring the

original tweet can click the "Everyone can reply" button under the tweet to display a list of options: "Everyone"; "People [the user] follow[s]"; and "Only people [the user] mention[s] [in the tweet]." If the author of the tweet selects the second option, only people who follow the author will be able to reply; if the user selects the third option, only accounts mentioned in the original tweet will be able to reply.

**B.      The @KenPaxtonTX account**

36.      Defendant established the @KenPaxtonTX account in June 2009, when he was a member of the Texas House of Representatives. He has been an elected official at all times since the opening of the @KenPaxtonTX account: first as a member of the Texas House, then as a member of the Texas Senate, and then as Attorney General. He was elected Attorney General of Texas in 2014 and sworn into office in January 2015. He was then re-elected to a second term as Attorney General in 2018.

37.      The profile page of the @KenPaxtonTX account indicates, in multiple ways, that the account is an official account. The descriptive name, which appears above the "@KenPaxtonTX" handle name on the profile page, reads "Attorney General Ken Paxton," and it lists his location as "The Great State of Texas." The header above Attorney General Paxton's photo displays the phrase "Ken Paxton Texas Attorney General." The account features a blue checkmark, indicating that it has been verified by Twitter. And the account's biographical information includes the title "Texas Attorney General Ken Paxton."

38.      The @KenPaxtonTX account is accessible to the public at large without regard to any limiting criteria. Attorney General Paxton has not "protected" his tweets, and accordingly anyone who wants to follow the account can do so. He has not issued any rule or statement purporting to limit (by form or subject matter) the speech of those who reply to his

tweets. He has not limited who can reply to his tweets. The only users who cannot follow @KenPaxtonTX are those he has blocked.

39.     Attorney General Paxton uses @KenPaxtonTX, often multiple times a day, to announce, describe, and defend his policies and legal challenges brought by his office; to comment on national and local issues; to share news appearances and interviews related to his official duties; to retweet tweets from the @TXAG account (an account that belongs to the State of Texas but that is made available to whoever occupies the post of Attorney General at the time); and to communicate with his constituents, occasionally by responding to their tweets. Because of the way he uses the account, Attorney General Paxton's tweets have become an important source of news and information about his work. Further, the comment threads associated with the tweets have become important forums for speech by, to, and about Attorney General Paxton.

40.     Attorney General Paxton has tweeted hundreds of times from the @KenPaxtonTX account about matters relating to his official duties. For example, on July 1, 2015, he tweeted the following:



41.    On March 30, 2020:



42.    On September 14, 2020:



43.     On November 6, 2020:



44.     On December 9, 2020:



45.    On January 1, 2021:



46.    On January 13, 2021:



47.     And on March 10, 2021:



48.     The Office of the Texas Attorney General operates a separate Twitter account, @TXAG. The @TXAG account has approximately 70,000 followers and is used to share official news and information from the Texas Attorney General's office. The @KenPaxtonTX account's profile page encourages people to follow the @TXAG account for "official news from [Attorney General Paxton's] office," but Attorney General Paxton regularly uses the

@KenPaxtonTX account to make official announcements or provide information that is not

communicated through the @TXAG account.

     49.    For example, on September 24, 2020, Attorney General Paxton posted this

tweet:



Neither that tweet, however, nor a discussion about the meeting at the White House, appeared

on the @TXAG account.

     50.    On November 17, 2020, Attorney General Paxton tweeted the following

statement in response to allegations by former employees of his office who publicly stated they

were fired in retaliation for accusing him of misconduct:



This statement was not posted to (or retweeted by) the @TXAG account.

51.     And on March 1, 2021, Attorney General Paxton used the @KenPaxtonTX account to share a story by The Federalist concerning a letter he sent in his official capacity. He tweeted:



However, neither that tweet nor other details about this effort appear on the @TXAG account.

52.     Because of the way in which Attorney General Paxton uses @KenPaxtonTX, the account has become an important source of information about the work and policies of the Texas Attorney General's Office. This information is relevant not just to the residents of Texas but to Americans more generally, given the national scope of many of the matters the Texas Attorney General's office tackles. Those who are blocked from the @KenPaxtonTX account are impeded in their ability to learn information that is shared only through that account.

53.     The comment threads associated with tweets from @KenPaxtonTX are important forums for discussion and debate about Attorney General Paxton's decisions and the policies of his office. Typically, tweets from @KenPaxtonTX generate dozens if not hundreds of replies, some of which generate their own replies in turn. The @KenPaxtonTX account is a

kind of digital town hall in which Attorney General Paxton uses the tweet function to communicate news and information to the public, and members of the public use the reply function to respond to Attorney General Paxton and exchange views with one another.

### C.   Defendant's unconstitutional blocking of critics from the @KenPaxtonTX account

<u>Individual Plaintiffs</u>

54.     The Individual Plaintiffs are Twitter users who have been blocked by Attorney General Paxton from the @KenPaxtonTX account because they criticized him or his policies. Attorney General Paxton's blocking of the Individual Plaintiffs from the @KenPaxtonTX account prevents or impedes the Individual Plaintiffs from viewing his tweets; from replying to these tweets; from viewing the comment threads associated with these tweets; and from participating in the comment threads.

55.     Attorney General Paxton's viewpoint-based blocking of the Individual Plaintiffs from the @KenPaxtonTX account infringes the Individual Plaintiffs' First Amendment rights. It imposes an unconstitutional restriction on their participation in a designated public forum; on their right to access statements that Attorney General Paxton is otherwise making available to the public at large; and on their right to petition the government for redress of grievances.

56.     Attorney General Paxton's practice of blocking individuals who criticize him from the @KenPaxtonTX account appears to be widespread. On information and belief, in addition to the Individual Plaintiffs named in this Complaint, Attorney General Paxton has blocked many other individuals from the @KenPaxtonTX account based on their viewpoints.

*Mario Carrillo*

57.     Plaintiff Mario Carrillo resides in Austin, Texas. He is a campaign manager with a pro-immigration organization. His Twitter account handle is @_mariocarrillo_.

58.     Before he was blocked, Mr. Carrillo viewed tweets from the @KenPaxtonTX account to remain updated on news about Attorney General Paxton and his office. He was often particularly interested in content from the account related to Attorney General Paxton's immigration policies.

59.     Mr. Carrillo learned that Attorney General Paxton blocked him from the @KenPaxtonTX account on or around February 27, 2021. The most recent tweets in which Mr. Carrillo had specifically mentioned the @KenPaxtonTX account before that point were two tweets on October 29 and October 31, 2020.

60.     In the tweet on October 29, 2020, Mr. Carrillo retweeted a tweet from the @TXAG account which stated that Attorney General Paxton's office was exploring options for preventing the El Paso County Judge from issuing a shutdown order in light of COVID-19. Mr. Carrillo commented, "The party of local control strikes again. Also, when is court date again @KenPaxtonTX?"

61.     In asking about the "court date," Mr. Carrillo was referencing the fact that Attorney General Paxton was indicted by a Collin County grand jury in July 2015 on three felony securities fraud charges: two first-degree felony counts of securities fraud for allegedly having persuaded investors to purchase stock in a technology company without disclosing that the company would compensate him for the purchase, and one third-degree felony count of acting as an investment adviser representative without registering with state regulatory authorities. While a federal case arising from the same allegations as the two first-degree felony

counts was dismissed in 2017, the state case remains open. A trial set for May 2017 has been repeatedly delayed.

62.     On October 31, 2020, Mr. Carrillo retweeted a tweet from the @TXAG account regarding Attorney General Paxton's guidance to election officials that poll watchers did not need to maintain six feet of social distancing from voters or election workers. Mr. Carrillo commented, "In case y'all didn't know, @KenPaxtonTX is a ghoul."

63.     Many of Mr. Carrillo's later tweets regarding Attorney General Paxton did not mention the @KenPaxtonTX account, however, Mr. Carrillo subsequently realized he had been blocked from the account.

64.     Attorney General Paxton's blocking of Mr. Carrillo from the @KenPaxtonTX account prevents or impedes Mr. Carrillo from viewing Attorney General Paxton's tweets; from replying to these tweets; from viewing the comment threads associated with these tweets; and from participating in the comment threads.

*Joseph Cascino*

65.     Plaintiff Joseph Cascino resides in Austin, Texas. He is a student at the University of Texas at Austin, and the president of the Texas College Democrats. His Twitter account handle is @Joecascinotx.

66.     Before he was blocked, Mr. Cascino viewed tweets from the @KenPaxtonTX account to stay informed about Attorney General Paxton, often replying to tweets from local news outlets that retweeted or quoted tweets from the @KenPaxtonTX account.

67.     Mr. Cascino believes Attorney General Paxton blocked him from the @KenPaxtonTX account on or around January 4, 2021. On January 3, 2021, Attorney General Paxton tweeted: "Confirmed: Join me and @realDonaldTrump in Washington D.C. this

Wednesday, January 6th. All Patriots need to be present to stand with President Trump. Register at Trumpmarch.com. #MarchForTrump #election2020 #StopTheSteal #Trump #MAGA #ElectoralCollege." Mr. Cascino replied to the tweet, stating "Go on and beg for your pardon." Mr. Cascino was referencing Attorney General Paxton's outstanding indictments and speculation that Attorney General Paxton was seeking a preemptive pardon from then-President Donald Trump.

68.     On January 4, 2021, Attorney General Paxton tweeted: "Are you ready? Join us in D.C. make this the largest MAGA rally ever. @realDonaldTrump #MarchForTrump #StopTheSteal #election2020." The tweet included a promotional video about the event. Mr. Cascino replied to that tweet, stating, "Enjoy the fresh air before you go to prison, Kenneth!" Mr. Cascino was referencing Attorney General Paxton's outstanding indictments. Mr. Cascino subsequently realized he had been blocked from the @KenPaxtonTX account.

69.     Attorney General Paxton's blocking of Mr. Cascino from the @KenPaxtonTX account prevents or impedes Mr. Cascino from viewing Attorney General Paxton's tweets; from replying to these tweets; from viewing the comment threads associated with these tweets; and from participating in the comment threads.

*Justin Champlin*

70.     Plaintiff Justin Champlin resides in Austin, Texas. He works in sales for a technology company. His Twitter account handle is @DesPorkLoins.

71.     Before he was blocked, Mr. Champlin often viewed tweets from the @KenPaxtonTX account that local media outlets retweeted.

72.     Mr. Champlin believes Attorney General Paxton blocked him from the @KenPaxtonTX account on or around January 1, 2021. On December 31, 2020, Mr. Champlin

replied to a tweet from the @KenPaxtonTX account, in which Attorney General Paxton wrote: "Join me on America's Newsroom (Fox News) at 9:30 am CST to discuss the Texas lawsuit against Travis Co. and City of Austin for COVID - related shutdown. #notonmywatch." Mr. Champlin responded to the tweet with "I guess you didn't try hard enough. What a waste of a hearing. You wasted everyone's time by sending unprepared lawyers with no basis to their claims." Mr. Champlin subsequently realized he had been blocked from the @KenPaxtonTX account.

73.     Attorney General Paxton's blocking of Mr. Champlin from the @KenPaxtonTX account prevents or impedes Mr. Champlin from viewing Attorney General Paxton's tweets; from replying to these tweets; from viewing the comment threads associated with these tweets; and from participating in the comment threads.

*Edward Espinoza*

74.     Plaintiff Edward Espinoza resides in Austin, Texas. He is the executive director of an organization that promotes progressive messages and policies. His Twitter account handle is @EdEspinoza.

75.     Before he was blocked, Mr. Espinoza followed the @KenPaxtonTX account, occasionally responding to tweets from the account by criticizing Attorney General Paxton's policies or political statements.

76.     Mr. Espinoza believes Attorney General Paxton blocked him from the @KenPaxtonTX account sometime in the beginning of January 2021. On January 1, 2021, Mr. Espinoza replied to a tweet from the @KenPaxtonTX account in which Attorney General Paxton celebrated the Texas Supreme Court's reversal of an Austin local order closing restaurants and bars in response to COVID-19. Mr. Espinoza replied to the tweet, asking if the

Texas Supreme Court could "stop the holdup on [Attorney General Paxton's] 5+ year felony indictment?" Mr. Espinoza added in his tweet, "It should be illegal that you've been allowed to evade it for so long." Then on January 7, 2021, Mr. Espinoza retweeted a tweet from another account that said "In case you were wondering what our Texas leaders were up to yesterday" and mentioned various Texas officials. The tweet mentioned the @KenPaxtonTX account, stating Attorney General Paxton "Den[ied] that the [Jan. 6] rioters were Trump supporters." Mr. Espinoza subsequently realized he had been blocked from the @KenPaxtonTX account.

77.    Attorney General Paxton's blocking of Mr. Espinoza from the @KenPaxtonTX account prevents or impedes Mr. Espinoza from viewing Attorney General Paxton's tweets; from replying to these tweets; from viewing the comment threads associated with these tweets; and from participating in the comment threads.

### *Omar Gallaga*

78.    Plaintiff Omar Gallaga resides in New Braunfels, Texas. He is a freelance journalist. His Twitter account handle is @omarg.

79.    Before he was blocked, Mr. Gallaga viewed tweets from the @KenPaxtonTX account, sometimes mentioning the account in tweets and retweets.

80.    Mr. Gallaga believes Attorney General Paxton blocked him from the @KenPaxtonTX account in January 2021. Though Mr. Gallaga is not certain which of his tweets prompted the blocking, on December 11, 2020, he retweeted a story by the Austin American-Statesman discussing Attorney General Paxton's efforts to block the results of the 2020 Presidential Election. Along with a link to the story, Mr. Gallaga noted, "I have lived in Texas for so long that I remember when people took @KenPaxtonTX seriously." On January 1, 2021, Mr. Gallaga retweeted a tweet from the @KenPaxtonTX account that featured a graphic

saying "Happy New Year! 2021" with the Texas flag in the image. Mr. Gallaga tweeted "Spoke too soon. Can you indict someone for willful misuse and abuse of gradients?"

81.     Then on January 14, 2021, Mr. Gallaga retweeted a story tweeted by the Austin American-Statesman about school districts hoping to receive federal pandemic relief funding. Mr. Gallaga stated "What if the money @KenPaxtonTX is requesting for his many lawsuits and for outside counsel on his own shitshow case were sent to schools instead?" Regarding "his own shitshow case," Mr. Gallaga was referring to an ongoing whistleblower lawsuit against the Attorney General filed in November 2020. In the litigation, former aides to the Attorney General allege that he retaliated against them for requesting that federal law enforcement investigate the Attorney General for, the whistleblowers alleged, potential violations of federal and state law encompassing alleged potential improper influence, abuse of office, and bribery. Mr. Gallaga subsequently realized he had been blocked from the @KenPaxtonTX account.

82.     Attorney General Paxton's blocking of Mr. Gallaga from the @KenPaxtonTX account prevents or impedes Mr. Gallaga from viewing Attorney General Paxton's tweets; from replying to these tweets; from viewing the comment threads associated with these tweets; and from participating in the comment threads.

*Fatima Maniar*

83.     Plaintiff Fatima Maniar resides in Houston, Texas. She is a United States Army veteran and a project manager for a health insurance company. Her Twitter account handle is @fatimamhtx.

84.     Before she was blocked, Ms. Maniar followed the @KenPaxtonTX account to stay informed about Attorney General Paxton's policies. As a single mother, she is particularly

27

interested in child support issues. She also strives to remain updated on issues related to elections and immigration.

85.     Ms. Maniar believes Attorney General Paxton blocked her from the @KenPaxtonTX account in late November 2020.

86.     For example, on November 9, 2020, Ms. Maniar responded to Attorney General Paxton's retweet of a New York Post article about authorization of investigations into allegations regarding the 2020 election by then-United States Attorney General William Barr. Ms. Maniar replied, "1,931 days since you were indicted of 3 felony counts by a grand jury, shouldn't you be worried about that instead? #PaxtonforJail."

87.     On November 10, Ms. Maniar quote-tweeted a Dallas Morning News editorial, "Attorney General Ken Paxton must resign now." Ms. Maniar commented, "1,932 days since he was indicted by a grand jury of 3 felonies, he's had several aides step down because of widespread corruption in his office… #resignNow @KenPaxtonTX." She also tweeted a link to a Twitter "events" page, "Supreme Court hears oral arguments in challenge to the Affordable Care Act," and commented, "In the middle of a pandemic @KenPaxtonTX the indicted felon &AG of Texas attempts to strip millions of Americans of their health insurance. #SCOTUS Supreme Court hears oral arguments on Affordable Care Act."

88.     And on November 11, Ms. Maniar replied to a tweet from another user that in part asked the @KenPaxtonTX account "any idea when your trial for securities fraud is going to take place? I wouldn't miss it for the world, but it's been 5+ years since your indictment. Help me out!" Ms. Maniar stated, "Me too, it's been 1,933 days since a grand jury indicted him." Ms. Maniar (a veteran) also replied to a tweet from the @KenPaxtonTX account thanking veterans for their service. She tweeted, "It's been 1,933 days since a grand jury

indicted you of 3 felony counts, will you face justice?" Ms. Maniar subsequently realized she had been blocked from the @KenPaxtonTX account.

89.    Attorney General Paxton's blocking of Ms. Maniar from the @KenPaxtonTX account prevents or impedes Ms. Maniar from viewing Attorney General Paxton's tweets; from replying to these tweets; from viewing the comment threads associated with these tweets; and from participating in the comment threads.

*Jennifer Ramos*

90.    Plaintiff Jennifer Ramos resides in Austin, Texas. She is a project assistant for a communications firm. Her Twitter account handle is @itsjenramos.

91.    Before she was blocked, Ms. Ramos followed the @KenPaxtonTX account to stay informed about issues that Attorney General Paxton addresses. Ms. Ramos is particularly interested in child support, paid sick leave, and immigration. Occasionally, Ms. Ramos would reply to tweets from the @KenPaxtonTX account.

92.    Ms. Ramos believes Attorney General Paxton blocked her from the @KenPaxtonTX account on or around January 21, 2021. The previous day, Attorney General Paxton tweeted a message about the inauguration of President Joe Biden, stating "I will always stand firm for Texas." Ms. Ramos replied to the tweet shortly thereafter, saying "So can you do us a favor and turn yourself in? You're indicted and didn't get pardoned by Trump, after all." Later that day, she replied to comments from other Twitter users replying to her tweet, saying "Let's not forget him trying to throw all his staffers under the bus for reporting his indiscretions." Ms. Ramos was referring to the reported events underlying the ongoing whistleblower lawsuit against the Attorney General. Ms. Ramos subsequently realized she had been blocked from the @KenPaxtonTX account.

93.     Attorney General Paxton's blocking of Ms. Ramos from the @KenPaxtonTX account prevents or impedes Ms. Ramos from viewing Attorney General Paxton's tweets; from replying to these tweets; from viewing the comment threads associated with these tweets; and from participating in the comment threads.

*John Ruffier*

94.     Plaintiff John Ruffier resides in El Paso, Texas. He is a student at the University of Texas at El Paso (UTEP), the President of the UTEP College Democrats, and an office assistant at a medical supply company. His Twitter account handle is @notthechips.

95.     Before he was blocked, Mr. Ruffier viewed tweets from the @KenPaxtonTX account to stay informed about Attorney General Paxton and his policies.

96.     Mr. Ruffier believes Attorney General Paxton blocked him from the @KenPaxtonTX account on or around February 28, 2021. The previous day, Mr. Ruffier tweeted "attorney general ken paxton? more like 'going to jail!' am i right kenneth? @KenPaxtonTX." Mr. Ruffier was referencing Attorney General Paxton's outstanding felony indictments. He also replied to a tweet from the @KenPaxtonTX account, in which Attorney General Paxton retweeted a tweet and photo of himself and another person at the Conservative Political Action Conference, with neither of them wearing masks. Mr. Ruffier tweeted a response to the photo: "wear a mask nerd." Mr. Ruffier subsequently realized he had been blocked from the @KenPaxtonTX account.

97.     Attorney General Paxton's blocking of Mr. Ruffier from the @KenPaxtonTX account prevents or impedes Mr. Ruffier from viewing Attorney General Paxton's tweets; from replying to these tweets; from viewing the comment threads associated with these tweets; and from participating in the comment threads.

*James Scurlock*

98.     Plaintiff James Scurlock resides in Leander, Texas. He is a civil rights and employment attorney. His Twitter account handle is @realscurlock.

99.     Before he was blocked, Mr. Scurlock was following the @KenPaxtonTX account to stay updated on Attorney General Paxton's work, often paying special attention to the way in which Attorney General Paxton used taxpayer funds.

100.     Mr. Scurlock believes Attorney General Paxton blocked him from the @KenPaxtonTX account on or around March 11, 2021. On March 10, Mr. Scurlock replied to a tweet from the account about mask mandates in Travis County and Austin. Mr. Scurlock stated in the reply, "You're indicted." That same day, Mr. Scurlock replied to a March 8, 2021 tweet from the account in which Attorney General Paxton wrote "Happy #InternationalWomensDay! Today I recommit myself to fighting for women & girls in TX while Biden & his radical-left allies continue to wage war against them. Despite Dems' empty claims to the contrary, today's progressives are openly hostile to women. Here's my latest." The tweet included a formal letter that Attorney General Paxton had sent to President Biden. Mr. Scurlock replied to the tweet, stating "You have victimized women. You're indicted for making women victims of your crimes."

101.     Then on March 11, 2021, Mr. Scurlock retweeted a tweet from another user that said, "Don't get distracted by his antics. @KenPaxtonTX just wants you to forget he's under indictment for securities fraud, and that the FBI is investigating him for using the Texas AG's office to benefit a political donor. Wear your mask, Texas—to not do so would be plain silly." Mr. Scurlock subsequently realized he had been blocked from the @KenPaxtonTX account.

102.     Attorney General Paxton's blocking of Mr. Scurlock from the @KenPaxtonTX account prevents or impedes Mr. Scurlock from viewing Attorney General Paxton's tweets; from replying to these tweets; from viewing the comment threads associated with these tweets; and from participating in the comment threads.

Knight First Amendment Institute

103.     Plaintiff Knight First Amendment Institute at Columbia University is a 501(c)(3) organization that defends the freedoms of speech and the press in the digital age through strategic litigation, research, and public education. The Knight Institute's staff operate a Twitter account under the handle @knightcolumbia, and this account follows @KenPaxtonTX and the Individual Plaintiffs' Twitter accounts.

104.     Unlike the Individual Plaintiffs, the Knight Institute has not been blocked from the @KenPaxtonTX account. It can access Attorney General Paxton's tweets on the same terms as other users, it can reply to the account directly, and it can participate fully in comment threads. The viewpoint-based exclusion of the Individual Plaintiffs and other blocked users from this forum, however, prevents the Knight Institute, the Individual Plaintiffs, and other forum participants from hearing the speech that the blocked users would have engaged in had they not been blocked. Because the First Amendment protects the right to hear as well as the right to speak, Attorney General Paxton's viewpoint-based blocking of the Individual Plaintiffs and other blocked users violates Plaintiffs' First Amendment rights.

**Cause of Action**

**Violation of the First and Fourteenth Amendments of the U.S. Constitution
(42 U.S.C. § 1983)**

105.    Defendant's blocking of the Individual Plaintiffs from the @KenPaxtonTX account violates the First and Fourteenth Amendments because it imposes a viewpoint-based restriction on the Individual Plaintiffs' participation in a public forum.

106.    Defendant's blocking of the Individual Plaintiffs from the @KenPaxtonTX account violates the First and Fourteenth Amendments because it imposes a viewpoint-based restriction on the Individual Plaintiffs' access to official statements Attorney General Paxton otherwise makes available to the general public.

107.    Defendant's blocking of the Individual Plaintiffs from the @KenPaxtonTX account violates the First and Fourteenth Amendments because it imposes a viewpoint-based restriction on the Individual Plaintiffs' ability to petition the government for redress of grievances.

108.    Defendant's blocking of the Individual Plaintiffs and other individuals from the @KenPaxtonTX account based on their viewpoints violates the First and Fourteenth Amendments because it imposes a viewpoint-based restriction on Plaintiffs' right to hear.

**Prayer for Relief**

WHEREFORE, Plaintiffs respectfully request that this Court:

1.    Declare Defendant's viewpoint-based blocking of the Individual Plaintiffs and other individuals from the @KenPaxtonTX account to be unconstitutional;

2.    Enter an injunction requiring Defendant to unblock the Individual Plaintiffs from the @KenPaxtonTX account, and prohibiting Defendant from blocking the Individual Plaintiffs or other individuals from the account on the basis of viewpoint;

3.      Award Plaintiffs their costs, including reasonable attorneys' fees, pursuant to 42

U.S.C. § 1988; and

4.      Grant any additional relief as may be just and proper.


Dated: April 8, 2021                              Respectfully submitted,

                                                   /s/ *Katherine Fallow*
                                                  Katherine Fallow*
                                                  Jameel Jaffer*
                                                  Lyndsey Wajert*
                                                  Alex Abdo*
                                                  Knight First Amendment Institute
                                                    at Columbia University
                                                  475 Riverside Drive, Suite 302
                                                  New York, NY 10115
                                                  (646) 745-8500
                                                  katie.fallow@knightcolumbia.org
                                                  jameel.jaffer@knightcolumbia.org
                                                  lyndsey.wajert@knightcolumbia.org
                                                  alex.abdo@knightcolumbia.org

                                                  /s/ *Kathryn Huddleston*
                                                  Kathryn Huddleston*
                                                  Andre Segura*
                                                  Thomas Buser-Clancy
                                                  American Civil Liberties Union Foundation
                                                    of Texas, Inc.
                                                  5225 Katy Fwy., Suite 350
                                                  Houston, TX  77007
                                                  (713) 942-8146
                                                  khuddleston@aclutx.org
                                                  asegura@aclutx.org
                                                  tbuser-clancy@aclutx.org

                                                  **pro hac vice forthcoming*